<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW JERSEY *ex rel.* MARK W. AISEN, <br><br> *Plaintiffs*, <br><br> v. <br><br> MOTOR COACH INDUSTRIES, Inc., <br><br> *Defendant*. | Civil Action No. 21-16355 (JKS)(LDW) <br><br> **OPINION** <br><br> August 12, 2024 |

**SEMPER,** District Judge

Currently pending before the Court is a motion to dismiss the Second Amended Complaint ("SAC") (ECF 23) filed by Defendant Motor Coach Industries, Inc. ("Defendant" or "MCI") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 40.) Plaintiff Mark Aisen ("Plaintiff" or "Relator") filed a brief in opposition (ECF 46), to which Defendant replied, (ECF 48.)[1] Plaintiff alleges violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the False Claims Act of the State of New Jersey ("NJFCA"), N.J. Stat. Ann. § 2A:32C–1 *et seq.* The Court reviewed the submissions made in support of and in opposition to the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's motion is **GRANTED.**

---

[1] Defendant's brief in support of their motion (ECF 40-1) will be referred to as "Def. Br."; Plaintiff's brief in opposition (ECF 46-1) will be referred to as "Pl. Opp."; and Defendant's reply brief (ECF 48) will be referred to as "Def. Reply".

I.   BACKGROUND

   A.  Factual Background[2]

Relator Mark Aisen was formerly employed by New Jersey Transit ("NJT") between April 2016 and January 2019 as a Hearing Officer. (ECF 23, SAC ¶¶ 5, 27.) Defendant MCI is a manufacturer and supplier of commercial commuter buses which are used by, among other entities, public transit authorities such as NJT. (*Id.* ¶ 4.) Prior to Relator's employment, on or about February 17, 2015, NJT issued Request for Proposal 15-007 ("RFP"), soliciting proposals from bus manufacturers to manufacture, test, and deliver to NJT seven hundred and seventy-two (772) 45-foot diesel cruiser buses. (*Id.* ¶ 29.) The RFP required all bidders to "also offer to purchase from NJT used buses as trade-ins." (*Id.* ¶ 30.) The RFP also required all bidders to submit a signed non-collusion affidavit and code of ethics affidavit with their proposals. (*Id.* ¶ 46.) According to Relator, three companies submitted bids in response to the RFP, and MCI was ultimately awarded the contract. (*Id.* ¶¶ 33-34.)

On October 30, 2015, MCI and NJT entered a contract based on the RFP (the "Contract"). (*Id.* ¶ 35; *see also* ECF 23-2, Ex. B.) Relator broadly alleges that the Contract "was paid for by a combination of funds from New Jersey and the federal government." (ECF 23, SAC ¶ 15.) During his tenure at NJT, Relator participated in "a number of conversations" regarding the administration and costs of the Contract. (*Id.* ¶ 36.) As a result of these conversations, Relator became suspicious that the Contract was not being administered properly and was collusive, which led him to investigate further. (*Id.*) On information and belief, Relator alleges that at least one thousand one hundred and four (1,104) commuter buses were ultimately manufactured and delivered to NJT by

---

[2] The factual background is taken from the SAC. (ECF 23.) When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

the Defendant, pursuant to the Contract and the Contract's change orders, and the Defendant was correspondingly paid an amount greater than $385,221,477 for these buses in total. (*Id*. ¶ 39.)

Relator alleges that the trade-in provision was a collusive arrangement between MCI and NJT because MCI and NJT are competitors in the used bus market and the trade-in provision was intended to prevent NJT's used buses from entering that market which would lead to depressed prices for MCI used buses. (*Id.* ¶¶ 11, 55.) Relator contends the trade-in provision was part of an unlawful "quid-pro-quo" arrangement where MCI would provide NJT favorable pricing on the new buses in return for NJT's promise to keep used MCI buses off the resale market. (*Id.* ¶¶ 10, 56.) Relator also alleges that the price MCI offered NJT for its used buses was below their market or scrap value. (*Id.* ¶ 13.) Furthermore, Relator alleges that MCI engaged in a fraudulent scheme for the purchase of bus safety cameras, which were added to the Contract through change orders on or about May 15, 2017. (*Id*. ¶ 58.) The relator contends 2,500 camera systems were purchased for $29.1 million dollars with "funding provided by the State of New Jersey and the Federal government." (*Id*.) Despite repeated conversations at staff meetings that only new MCI buses were getting cameras, no retrofitting occurred, and the camera order remains unaccounted. (*Id*. ¶ 59.)

### B. Procedural Background

On September 1, 2021, Relator filed his original complaint under seal. (ECF 1.) Over one year later, Relator filed his first amended complaint under seal. (ECF 11.) On November 23, 2022, the United States and New Jersey filed their notice of election to decline intervention. (ECF 14.) On April 19, 2023, Relator filed his Second Amended Complaint also under seal. (ECF 23.) On June 14, 2023, the United States and New Jersey filed their second notice of election to decline intervention. (ECF 24.) On June 22, 2023, the case was unsealed by this Court. (ECF 25.) Defendant filed the instant motion to dismiss on December 8, 2023. (ECF 40.)

Based on the above summarized allegations, Relator asserts claims under the federal FCA (Counts I through IV) and NJFCA (Count V) premised on contentions that MCI made legally and factually false claims for payment.

### C. False Claims Act Background

"The False Claims Act was adopted in 1863 and signed into law by President Abraham Lincoln in order to combat rampant fraud in Civil War defense contracts." *U.S. ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 753 (3d Cir. 2017) (quoting *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 575 U.S. 650, 652 (2015)). The FCA's primary purpose "is to indemnify the government – through its restitutionary penalty provisions – against losses caused by a defendant's fraud." *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001) (citing *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 551-52 (1943)). The FCA has since evolved but continues to penalize persons who knowingly submit fraudulent claims to the Government. *See U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1152 (3d Cir. 1991).

A private party, called a relator, may bring a *qui tam* action on behalf of the Government alleging a violation of the FCA. 31 U.S.C. § 3730(b). In its current form, the FCA imposes civil penalties and treble damages on defendants who submit false or fraudulent claims to the government. Individual relators can receive between 15% and 30% of the recovered amount. *Spay*, 875 F.3d at 753.

## II. LEGAL STANDARD

Defendants seek to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Moreover, because the FCA is an anti-fraud statute, FCA claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake[,]" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, Rule 9(b) requires that a plaintiff allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue.'" *U.S. ex rel.*

5

x

*Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)). With respect to a FCA claim, a plaintiff must "allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

### III.  ANALYSIS

#### A.  Particularity Required by Rule 9(b)

As discussed, Relator's fraud-based FCA claims must satisfy Rule 9(b), which requires a plaintiff or relator to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). In FCA cases, the Third Circuit requires, at a minimum, that a relator plead, "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Judd v. Quest Diagnostics Inc.*, 638 F. App'x 162, 168-69 (3d Cir. 2015) (citation omitted)).

Indeed, "an inference of illegality based on facts that could plausibly have either a legal or illegal explanation [is] insufficient to meet Rule 9(b)'s burden, because a relator must establish a strong inference that false claims were submitted, and the possibility of a legitimate explanation undermines the strength of the inference of illegality." *U.S. ex rel. Bennett v. Bayer Corp.*, No. 17-4188, 2022 WL 970219, at *4 (D.N.J. Mar. 31, 2022) (quotations and citations omitted). Instead, a relator must allege "all of the essential factual background . . . that is, the who, what, when, where, and how of the events at issue." *Id*. at *8 (quotations and citations omitted). The relator must "inject[] precision and some measure of substantiation into [his] allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). When a

6

complaint is "virtually devoid of nonconclusory factual allegations" about the submission of a false claim, it must be dismissed. *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 2014 WL 4375638, at *14 (E.D. Pa. Sept. 4, 2014); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible") (internal citations omitted).

Here, Relator's allegations as currently pled fail to inject the requisite precision to substantiate his allegations. Specifically, Relator fails to allege how the alleged fraudulent scheme was devised, implemented, or executed beyond allegations referencing the trade-in provision contained in the Contract, certain unspecified "conversations" that made him "suspicious," and one recorded call, the substance of which is entirely consistent with the disclosed terms of the Contract's trade-in provision. Relator similarly alleges no details about how false claims for payment were submitted by MCI or how those claims were reviewed, processed, and allegedly paid by NJT. Nor are there allegations that MCI made any statements or submitted any claims to the federal government.

Likewise, absent are allegations regarding who at MCI was responsible for implementing or executing the alleged fraudulent scheme or who, if anyone, at MCI and NJT purportedly colluded. The SAC further fails to identify who at MCI submitted the alleged "legally false claims for payment" and to whom at NJ Transit (or the federal government) the claims were purportedly submitted. Similarly, Relator fails to allege when or where such false claims were submitted. Indeed, Relator's conclusory allegation that "[i]nvoices were submitted by the Defendant" is the only reference to a purported payment. (ECF 23, SAC ¶ 49.) The SAC has no detail explaining what specifically was false within the invoices. Nor does the SAC allege any specific MCI

representation about the buses that were rendered false because of MCI's alleged failure to disclose purported noncompliance with antitrust laws and the non-collusion and code of ethics affidavits.

Relator's allegations with respect to the bus cameras are similarly deficient. In support of his camera-related FCA claims, Relator reiterates the conclusory allegation that MCI "made factually and legally false claims for payment on the camera contract that did not disclose its compliance with the non-collusion affidavit and its noncompliance with the material statutory, regulatory and contractual requirements." (ECF 23, SAC ¶ 71.) Relator once again fails to provide the requisite factual details supporting this vague allegation. Instead, Relator refers to unclear statements made to him by unidentified individuals at unidentified times, often lacking relevance to the particular FCA violations alleged by Relator and none of which are "factual allegations that plausibly suggest false or fraudulent claims were submitted" to either NJT or the federal government. *U.S. ex rel. Simmons v. New Horizons Cmty. Charter Sch.*, No. 20-00196, 2020 WL 6305513, at *3 (D.N.J. Oct. 28, 2020).

The SAC globally lacks the requisite specificity in identifying generally (i) who purportedly made false statements or submitted false claims; (ii) to whom such statements, claims, or records were submitted; (iii) when such statements, claims or records were submitted; (iv) what specifically was said and/or submitted that was false; and (v) how and why the statement, claim or record was false. However, perhaps most important to a federal FCA claim, as currently pled, Relator does not adequately allege a sufficient 'nexus between the alleged fraud and the [purported federal] government funds.'" *U.S. ex rel. Simmons v. New Horizons Cmty. Charter Sch.*, No. 20-00196, 2020 WL 6305513, at *4 (D.N.J. Oct. 28, 2020). Instead, Relator broadly asserts that "the contract was paid for" using a "combination of funds from New Jersey and the federal

government." (ECF 23, SAC ¶ 15.) As pled, there is no understanding of how the federal and/or state funds are sourced and whether the requisite nexus is present.

In his opposition brief, Relator urges the Court to apply a "relaxed 9(b) standard in the False Claims Act context[,]" in part advocating for the relaxed application "where evidence 'lies within [Defendants'] exclusive possession' and specific citation to each instance of fraudulent conduct would not be required."[3] (ECF 46-1, Pl. Opp. at 6-7.) However, Relator has not shown that he is entitled to a relaxed Rule 9(b) standard under Third Circuit precedent. Indeed, "to reap the benefit of a relaxed [Rule 9(b)] standard, a plaintiff must allege that the information lies exclusively in the defendants' control [and] . . . 'must accompany such an allegation with a statement of facts upon which their allegation is based.'"[4] Where a "third party or the government possesses information that plaintiffs allege is held by the defendants, relaxing the Rule 9(b) standard is inappropriate." *Piacentile v. Sanofi Synthelabo, Inc.*, No. 05-2927, 2010 WL 5466043, at *9 (D.N.J. Dec. 30, 2010); *U.S. ex rel. Perri v. Novartis Pharm. Corp.*, No. 15-6547, 2019 WL 6880006, at *17 (D.N.J. Feb. 21, 2019).

As a threshold issue, Relator has not alleged in the SAC that factual information is exclusively in MCI's knowledge or control, nor has Relator included a statement of facts in his Complaint in support of such an allegation. Instead, Relator makes sweeping assertions in his Opposition that "here, factual information is peculiarly within [MCI's] knowledge or control." (ECF 46-1, Pl. Opp. at 7.) This is insufficient, and the Court notes that any information about the

---

[3] The Court notes that Relator cites to out-of-circuit case law in arguing that this Court should apply a "relaxed" Rule 9(b) standard in evaluating whether his claims are pled with the requisite particularity. *See* (ECF 46-1, Pl. Opp. at 6-7) (citing *U.S. ex rel. Tamanaha v. Furukawa Am., Inc.*, 2011 WL 3423788, at *2 (9th Cir. Aug. 5, 2011); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

[4] *U.S. ex rel. Piacentile v. Sanofi Synthelabo, Inc.*, No. 05-2927, 2010 WL 5466043, at *9 (D.N.J. Dec. 30, 2010), *abrogated on other grounds by U.S. v. Johnson & Johnson*, No. 12-7758, 2017 WL 2367050 (D.N.J. May 31, 2017) (citations omitted); *U.S. ex rel. Perri v. Novartis Pharm. Corp.*, No. 15-6547, 2019 WL 6880006, at *17 n.18 (D.N.J. Feb. 21, 2019) (same).

Contract or its negotiation would not solely be in possession of MCI but would also likely be in the possession of NJT. *See Piacentile*, 2010 WL 5466043, at *9 (rejecting claim that a relaxed Rule 9(b) standard should apply because the federal government and third parties would possess information regarding the claims listed in the complaint).

In sum, Relator cites to no facts in support of his claim that "the Complaint identifies with sufficient particularity the who, the what, the how, the when, and the where of Defendants' violative conduct." (ECF 46-1, Pl. Opp. at 7.) Relator does not offer an appropriate basis to apply a relaxed Rule 9(b) standard here. In short, the SAC's lack of particularity falls short from meeting the stringent pleading requirements of Rule 9(b). Based on the foregoing, Defendant's Motion to Dismiss is **GRANTED** and Relator's Second Amended Complaint is **DISMISSED** without prejudice.

## IV.   CONLCUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 40) is **GRANTED.** Within sixty (60) days, Plaintiff may file an amended complaint addressing the deficiencies identified in this Opinion. An appropriate order follows.

/s/  Jamel K. Semper          
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:     Clerk
cc:       Leda D. Wettre, U.S.M.J.
          Parties

10